**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENRIQUE VELEZ, | |
| Petitioner, | Civil Action No. 10-3992 (NLH) |
| v. | **OPINION** |
| DONNA ZICKEFOOSE, | |
| Respondent. | |

**Hillman**, District Judge:

Petitioner, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.[1] The Petition seeks his speedier transfer to a community correctional center relying on the Second Chance Act. See Docket Entry No. 1. Since the Petition indicates that, at the instant juncture, that Petitioner is not entitled to relief, the Petition will be dismissed.

---

[1] Section 2241 provides, in relevant part, as follows: "(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . (c) The writ of habeas corpus shall not extend to a prisoner unless . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . ."

**I.    BACKGROUND**

    **A.    The Second Chance Act**

The process of assignments to Community Correctional Centers, known in the current parlance of federal prison administration as a Residential Re-Entry Center ("RRC"), is governed by 18 U.S.C. § 3624(c)(1), amended in 2007 by the Second Chance Act ("Act"), Pub. L. No. 110-199, effective April 9, 2008. In essence, the Act extended the maximum amount of time that the Federal Bureau of Prisons ("BOP") may place an inmate in an RRC from 180 days to twelve months. The statute provides, in pertinent part:

> (1) In General. - The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> . . .
>
> (4) No limitations. - Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
> . . .
>
> (6) Issuance of regulations. The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is -

   (A)  conducted in a manner consistent with section 3621(b) of this title;

   (B)  determined on an individual basis; and

   (C)  of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c).

 The BOP was ordered to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act to ensure that placement was conducted consistently with § 3621(b).[2]

---

 [2] Section 3621(b) states:

 (b) Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -

   (1) the resources of the facility contemplated;

   (2) the nature and circumstances of the offense;

   (3) the history and characteristics of the prisoner;

   (4) any statement by the court that imposed the sentence -   (A)  concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

   (5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) title 28 . . .

 . . . Any order, recommendation, or request by a sentencing

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers," providing staff guidance for implementing the Second Chance Act ("April 14, 2008, memo" or "Memorandum"). The Memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above.  Among other guidelines, the Memorandum provided:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

April 14, 2008, memo (quoted in Strong v. Schultz, 599 F. Supp. 2d 556, 562 (D.N.J. 2009)).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRC placement.  See 28

---

> court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

C.F.R. §§ 570.20-570.22.  However, the regulations did not incorporate the approval requirement cited in the April 14, 2008, memo (i.e., the requirement for approval from the Regional Director for pre-release RRC placement beyond six-months).[3]

### B.   Petitioner's Claims

Petitioner was convicted by a jury in the United States District Court for the Eastern District of North Carolina of four counts (unspecified in the Petition).[4]  On November 16, 2000, he was sentenced to a term of imprisonment (also not specified in

---

[3] Title 28 of the Code of Federal Register, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."  The time frames noted are set forth in section 570.21, which states:

(a)   Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.

. . .

(c)   Exceeding time-frames.  These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21.

[4] The docket of Petitioner's criminal prosecution reveals that these counts were: (a) bank robbery; (b) armed bank robbery; (c) brandishing of a firearm during a crime of violence; and (d) conspiracy to defraud the United States.  See USA v. Rivera et al., 00-cr-48 (EDNC).

the Petition).[5]  Assuming Petitioner receives all good conduct time available, his release is projected to take place on August 28, 2011.  See <<http://www.bop.gov/iloc2/InmateFinder Servlet?Transaction=NameSearch&needingMoreList=false&FirstName=ENRIQUE&Middle=&LastName=velez&Race=U&Sex=U&Age=&x=89&y=23>>.

   Just as the Petition omits stating the bases for Petitioner's conviction or the term of his imprisonment, the Petition is silent as to the date when Petitioner was reviewed by the BOP for placement in an RRC.  See Docket Entry No. 1.  Moreover, the Petition is also silent as to the exact period of RRC placement allotted to him by the BOP: rather, the Petition merely claims that such period is "less than six months."  See id. at 4.  In sum, the only date the Court can establish from the face of the Petition with a reasonable degree of certainty is the date when Petitioner executed his Petition: August 2, 2010, which appears to be only three-and-a-half-weeks prior to the beginning of the 12-month period of RRC placement that Petitioner seeks to obtain by means of the instant Petition.

---

[5] It appears that Petitioner was sentenced to eight years of imprisonment (i.e., to two consecutive terms, one of 3 years and another of 5 years, running concurrently with two other terms), plus various monetary fines.  See USA v. Rivera et al., 00-cr-48 (E.D.N.C.).

Petitioner concedes that his Second Act challenges are administratively unexhausted.[6]  See Docket Entry No. 1, at 4-5. He asserts, however, that his failure to exhaust administrative remedies should be excused because: (a) despite the date he chose to file the instant Petition, the process of administrative exhaustion, if undertaken now, would necessarily encroach upon a part of the 12-month period he seeks under the Second Chance Act; and (b) of his assumption that the BOP would rely on the BOP's April 14, 2008 memo to unjustifiably deny Petitioner twelve months of RRC placement.  See id. at 4-8.

## II.   DISCUSSION

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a

---

[6] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  See 28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  See 28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  See id. Appeal to the General Counsel is the final administrative appeal.  See id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  Goldberg v. Beeler, 82 F. Supp. 2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000); see also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Although exhaustion of administrative remedies is not required where exhaustion would not promote these goals, see, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm");

Carling v. Peters, 2000 U.S. Dist. LEXIS 10288, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury"), the exhaustion requirement is not excused lightly.

Indeed, it has been long established that an inmate's unjustified failure to pursue administrative remedies results in procedural default warranting decline of judicial review.  The Court of Appeals addressed this issue in Moscato, 98 F. 3d 757, the case where an inmate filed a § 2241 petition after the Central Office had denied his administrative appeal as untimely. The Court of Appeals pointed out that the inmate's failure to satisfy the time limits of the BOP's administrative remedy program resulted in a procedural default, see id. at 760, rendering judicial review of his habeas claim unwarranted, unless the inmate could demonstrate cause for his failure to comply with the procedural requirement[7] and, in addition, actual prejudice resulting from the alleged violation.  See id. at 761.

---

[7] The "cause" standard requires a showing that some external objective factor impeded the inmate's efforts to comply with the procedural bar.  See Murray v. Carrier, 477 U.S. 478, 488 (1986); United States v. Pelullo, 399 F. 3d 197, 223 (3d Cir. 2005) ("Examples of external impediments . . . include interference by officials") (citations and internal quotation marks omitted); Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) ("cause" typically involves a novel constitutional rule, a new factual predicate, hindrance by officials in complying with the procedural rule, or akin).  In contrast, a procedural default caused by ignorance of the law or facts is binding on the habeas petitioner. See Murray, 477 U.S. at 485-87.

Explaining the rationale of its decision, the Moscato Court explained that application of the cause and prejudice rule to habeas review of BOP proceedings insures that prisoners do not circumvent the agency and needlessly swamp the courts with petitions for relief, and promotes such goals of the exhaustion requirement such as allowing the agency to develop a factual record and apply its expertise facilitates judicial review, conserving judicial resources, and fostering administrative autonomy by providing the agency with an opportunity to correct its own errors. See id. at 761-62; see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

Here, Petitioner has not alleged any facts that would permit this Court to find that exhaustion of his administrative remedies would be futile or that his procedural default could meet the requirements of the cause and prejudice rule. All he offered this Court was his assertion that – at this juncture – the process of administrative exhaustion would take place during the period subject to the Second Chance Act reach. In other words, Petitioner attempts to capitalize on his decision to file the Petition right at the beginning of his last year of imprisonment. However, such self-serving strategy has never been rewarded by the courts with habeas relief. See, e.g., Shoup v. Schultz, 2009 U.S. Dist. LEXIS 46955, 2009 WL 1544664 at *4-5 (D.N.J. June 2, 2009) ("Petitioner had more than an ample period of time to

exhaust his administrative remedies. He, however, elected not to do so; rather, he waited until less than six weeks remained prior to his eligibility period under the Second Chance Act started running, and only then did he initiate this action. Consequently, the calamity - if any - which Petitioner might be facing is of his own making, and such hypothetical self-inflicted distress cannot serve as a basis for excusing the exhaustion requirement") (quoting, in support, Johnson v. Hogsten, 2009 U.S. Dist. LEXIS 32085, at *5 (E.D. Ky. Apr. 15, 2009), where the court observed that "Johnson argues that the Court should excuse him from completing the BOP's grievance process because he will be unable to do so before the date on which he would be entitled to transfer to a [RRC] had the BOP properly applied the Second Chance Act. This argument is without merit. . . . [H]ad he properly invoked the BOP's grievance process . . . , he would have had ample time to complete the exhaustion process. Therefore, any injury Johnson would suffer from his inability to complete the grievance process in time to obtain the full measure of relief he now seeks is self-inflicted").

    Petitioner's reliance on the April 14, 2008, memo fares no better than his argument based on exigency, since the memo ceased having any legal power long before Petitioner was considered for RRC placement. Petitioner's placement decision was made after

the effective date of the interim rule.[8]  Nevertheless, Petitioner alleges that his placement decision was impermissibly constrained by the six-month presumption contained in the Memorandum.

However, in cases such as the one at bar, where an inmate's RRC placement decision was made after the BOP issued the appropriate regulations and abandoned the directive in the Memorandum concerning the six-month presumptive placement, courts have consistently rejected claims based on this April 14, 2008, memo.  See, e.g., Torres v. Martinez, 2009 U.S. Dist. LEXIS 705774-5 (M.D. Pa. Aug. 12, 2009) (providing a detailed discussion of the rationale underlying such approach); see also Lewis v. Outlaw, 2010 U.S. Dist. LEXIS 28483 (E.D. Ark. Mar. 23, 2010) (same); Ramirez v. Hickey, 2010 WL 567997 (E.D. Ky. Feb. 12, 2010) (same).  Rather, the courts have consistently pointed out that the Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for up to the final twelve months of

---

[8] For instance, in Strong v. Schultz, 599 F. Supp. 2d 556, the petitioner's RRC placement decision was made on October 2, 2008, i.e., subsequent to the April 14, 2008 memo, but prior to the October 21, 2008 enactment of the regulations by the BOP.  In light of that fact, the Strong court held that the April 14, 2008, memo was inconsistent with the Second Chance Act's amendments to 3624(c), observing that it "impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)."  Strong, 599 F. Supp. 2d at 563.

his or her sentence." Lovett v. Hogsten, 2009 U.S. App. LEXIS 28957 (6th Cir. Dec. 29, 2009); see also Travers v. Federal Bureau of Prisons, 2009 U.S. Dist. LEXIS 110901, 2009 WL 4508585 (D.N.J. Nov. 30, 2009) ("nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than [that] already approved. These pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations"); Creager v. Chapman, 2010 U.S. Dist. LEXIS 26843 (N.D. Tex. Mar. 22, 2010)(although the inmate disagrees with her RRC placement date after consideration of the § 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles [the inmate] or any other prisoner to any guaranteed placement in a residential reentry center [and] 'the duration of [RRC] placement is a matter to which the [BOP] retains discretionary authority'") (citations and quotation omitted)); Chaides v. Rios, 2010 U.S. Dist. LEXIS 35873 (E.D. Cal. Mar. 13, 2010)("In sum, the BOP has discretionary authority to transfer an inmate to an RRC at any time, after considering the factors set forth in 18 U.S.C. § 3621(b), and has a separate and distinct obligation to consider an inmate for transfer to an RRC for up to twelve months prior to the inmate's release date,

after considering the factors set forth in section 3621(b)") (citation omitted).[9]

Because the face of the Petition establishes that Petitioner failed to exhaust administrative remedies regarding his RRC placement, and because Petitioner has not shown that his failure to exhaust should be excused, this Court will dismiss the Petition.

### III.     CONCLUSION

For the foregoing reasons, the Petition will be dismissed as unexhausted.  Such dismissal will be without prejudice to Petitioner's filing of a new § 2241 petition after Petitioner duly exhausts the administrative relief available to him.  See Lindsay v. Williamson, 271 Fed. App'x. 158, 160 (3d Cir. 2008) (affirming summary dismissal of § 2241 petition challenging BOP's

---

[9] Indeed, if Petitioner is correct in his statement that he was alloted "less than six months" of RRC placement, the considerations based on the April 14, 2008, memo appear facially unrelated to the analysis at hand.  See Wires v. Bledsoe, 2010 U.S. Dist. LEXIS 9094 (M.D. Pa. Feb. 3, 2010).  In the Wires case, the court found that:

> since the petitioner's unit team recommended significantly less than six months (only 60 days) in a RRC, there is no basis to infer that their discretion was in any way constrained or chilled by the requirement stated in the memoranda that RRC placement beyond six months must be based on unusual or extraordinary circumstances and must be approved by the Regional Director.

Wires, 2010 U.S. Dist. LEXIS 9094, at *12; see also

execution of sentence "[b]ecause the District Court could determine from the face of Lindsay's petition that he did not exhaust his administrative remedies, a prerequisite to suit").

An appropriate Order accompanies this Opinion.


/s/ NOEL L. HILLMAN
**NOEL L. HILLMAN**
**United States District Judge**

At Camden, New Jersey